James **BARKER, et al., Plaintiffs,**

v.

**UNDERWRITERS AT LLOYD'S, LONDON, et al., Defendants.**

Civ. No. 82–73682.

United States District Court, E.D. Michigan, S.D.

June 1, 1983.

Mark L. Dailey, Detroit, Mich., for Barker and BFH.

Harland E. Cohen, Southfield, Mich., for Rochmans, Gutmans and Argyle Bowl.

John McCloskey, Detroit, Mich., for Massolls.

Charles R. Tuffley, Southfield, Mich., for defendants.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

This matter is before the Court on defendants' motion for partial summary judgment on three of the five counts of the first amended complaint. Because this motion is directed solely at the allegations of the complaint, the Court will treat the motion as a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.Pro. 12(b)(6). It is well established that a motion to dismiss for failure to state a claim must not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. In ruling on this motion, the facts alleged in the complaint are assumed to be true. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Gibbs v. Buck,* 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1938).

The complaint alleges that defendants Underwriters at Lloyd's, London and Lincoln Insurance Company issued an insurance policy for loss by fire covering premises in which each of the plaintiffs possessed substantial interests. On March 2, 1982, a fire occurred at the insured premises and plaintiffs filed a claim for insurance proceeds with defendants. Defendant denied the claims on the basis that the fire was set or procured to be set by one of the plaintiffs. Plaintiffs subsequently filed this action and defendants now move to dismiss Counts III, IV, and V of the first amended complaint.

Count III alleges that defendants have violated the Uniform Trade Practices Act (UTPA), M.C.L.A. § 500.2001–.2050, by refusing to timely pay plaintiffs' claims under the insurance policy and by attempting to compel plaintiffs to forego their claims or accept less than the amount to which they are entitled. Defendants argue that Count III fails to state a claim because remedies for the violations of the UTPA are to be enforced by the state and not individual plaintiffs. Plaintiffs contend that there is an implied private cause of action to enforce the UTPA.

The UTPA was enacted by 1976 Mich. Pub.Act No. 273 as an amendment to the Michigan Insurance Code of 1956, 1956 Mich.Pub.Act No. 218, M.C.L.A. § 500.100 et seq. Section 230 of the Insurance Code of 1956 provides:

> Every penalty provided for by this code, if not otherwise provided for, shall be sued for and recovered in the name of the people by the prosecuting attorney of the county in which the insurer or the agent or agents so violating shall be situated; and shall be sued for and recovered in the name of the people, by the attorney general, and, when sued for and collected by him, shall be paid into the state treasury.

M.C.L.A. § 500.230. This provision has been held to preclude a private party from recovering penalties specified in the code. *Dasen v. Frankenmuth Mutual Ins. Co.,* 39 Mich.App. 582, 197 N.W.2d 835 (1972). In light of the legislative history of the UTPA, the Court finds that section 230 of the Insurance Code of 1956 governs the enforcement of the UTPA. Although plaintiffs argue that they have an implied cause of action under the UTPA, the only section of the act they refer to is section 2006(1), which provides:

> (1) A person must pay on a timely basis to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant the benefits provided

under the terms of its policy, or, in the alternative, the person must pay to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant 12% interest, as provided in subsection (4), on claims not paid on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute.

M.C.L.A. § 500.2006(1). The Michigan courts have indicated that a private party may directly recover this interest penalty in an action against the insurer. *See Fletcher v. Aetna Casualty & Surety Co.,* 80 Mich. App. 439, 264 N.W.2d 19 (1978), *aff'd on other grounds,* 409 Mich. 1, 294 N.W.2d 141 (1980); *Herring v. Golden State Mutual Life Ins. Co.,* 114 Mich.App. 148, 318 N.W.2d 641 (1982).

The Court finds that plaintiffs may assert a private cause of action to recover the interest penalty in section 2006 of the UTPA since that section provides that the insurer pay the interest penalty to the insured on claims not paid on a timely basis. In the absence of any authority supporting the maintenance of a private cause of action founded upon any other section of the UTPA, the Court concludes that section 230 of the Insurance Code of 1956, M.C.L.A. § 500.230, governs the enforcement of the UTPA and that plaintiff may not assert a private cause of action based on other alleged violations of the UTPA. *See* M.C. L.A. § 500.2028–.2050; *Fitzgerald v. Aetna Casualty & Surety Co.,* Civ. No. 81–10049 (E.D.Mich. August 25, 1982). However, the Court notes that any alleged violations of the UTPA may be relevant to plaintiffs' breach of contract claim in count I since mandatory statutory provisions are read into insurance contracts in Michigan. *See Galkin v. Lincoln Mutual Casualty Co.,* 279 Mich. 327, 272 N.W. 694 (1939); *Dasen v. Frankenmuth Mutual Ins. Co., supra.* Since the Court concludes that plaintiff may assert a claim for the interest penalty for the alleged failure to timely pay the claim, count III will not be dismissed.

Count IV of the first amended complaint alleges that defendants have violated the Racketeer Influenced and Corrupt Organization Act (RICO), Title IX of the Organized Crime Control Act, 18 U.S.C. § 1961 et seq., and injured plaintiffs in their business and property. Defendants assert that count IV fails to state a claim for three reasons. First, they argue that this count fails to assert that the alleged criminal acts were committed within ten years of each other. Second, defendants contend that plaintiffs fail to properly allege how the RICO violations impacted on their business or property. Third, they assert that count IV fails to specify the relationship between the persons conducting the racketeering activity and the enterprise.

Count IV of the first amended complaint alleges in pertinent part as follows:

40. Defendants have refused, and continue to refuse, to pay this loss for no valid reason.

41. Upon information and belief, Defendants purpose in refusing to pay this loss without valid reason is to force plaintiffs to compromise their claim for an amount less than they would otherwise be entitled to receive pursuant to the insurance policies.

42. Defendants' ulterior purpose for their refusal to pay this loss is fraudulent.

43. Upon information and belief, defendants have engaged in similar fraudulent activities in regard to other claims and losses.

44. Defendants' activities herein and in other instances amount to a pattern of racketeering activities as defined and prohibited in RICO by virtue of their having devised or intending to devise a scheme or artifice to defraud, or for obtaining money by means of false or fraudulent pretenses, representations or promises and using the U.S. Post Office in furtherance thereof, contrary to the provisions of Title 18 U.S.C. Section 1341.

45. Plaintiffs have been injured in their business and property by virtue of defendants' violation of Title 18 U.S.C. Section 1962 and are, therefore, entitled

to recover threefold the damages they have sustained and the costs of this suit, including reasonable attorneys' fees.

In response to defendants' motion to dismiss, plaintiffs have advanced the following theory of how defendants have violated RICO. They assert that defendants are persons associated in an enterprise to fraudulently deny valid insurance claims in order to force the claimants to accept settlements for less than the amount they are entitled to under the policy.

Although RICO's criminal provisions were enacted to halt what Congress perceived to be a pattern of infiltration of legitimate business by organized crime, Congress expressly authorized a private right of action for litigants injured by a violation of RICO's broad criminal provisions. Section 1964(c) provides:

> (c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

In this case, plaintiffs assert that defendants violated section 1962(c), which provides in pertinent part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . .

The issue raised by defendants' motion is whether the allegations of Count IV of the complaint sufficiently state the elements of a claim under these sections. For the several reasons discussed below, the Court concludes that the allegations in count IV fail to state a claim under RICO.

■ The Court notes at the outset that civil liability under section 1964(c) is not limited to persons already convicted of or charged with criminal racketeering activity.

*USACO Coal Co. v. Carbomin Energy, Inc.,* 689 F.2d 94, 95 n. 1 (6th Cir.1982).

■ To allege a civil claim under RICO based upon a violation of section 1962(c), plaintiffs must allege a pattern of racketeering activity. Racketeering activity is defined in section 1961(1)(B) to include any act which is indictable under 18 U.S.C. § 1341 relating to mail fraud. An offense under the mail fraud statute may be established by showing a scheme to defraud and the use of the mails in furtherance of that scheme. *United States v. George,* 477 F.2d 508 (7th Cir.1973). Plaintiffs allege that defendants have engaged in a scheme to defraud by fraudulently refusing to pay claims without valid reasons in order to force persons to compromise their claim for an amount less than they are entitled to under the insurance policies. Plaintiffs also allege that defendants used the U.S. Post Office in furtherance of this scheme. The allegations of fraud, however, fail to satisfy Fed.R.Civ.Pro. 9(b), which requires that the circumstances constituting fraud be stated with particularity. This requirement applies to civil RICO actions which are based on the violations of mail fraud statute. *See Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir.1982). Assuming the allegations of fraud were stated with the requisite particularity, the allegations could be construed to allege racketeering activity as defined in section 1961(1)(B). However, as discussed above, plaintiffs must allege a pattern of racketeering activity, which is defined in section 1961(5) to require at least two acts of racketeering activity, one of which occurred after the effective date of the act and the last of which occurred within ten years after the commission of a prior act of racketeering activity. Plaintiffs allege in count IV that defendants' activities "amount to a pattern of racketeering activities as defined and prohibited by RICO . . ." The Court finds that such conclusory pleading insufficiently alleges a pattern of racketeering activity, especially when the alleged racketeering activity is mail fraud, which must be pleaded with particularity.

In addition to alleging a pattern of racketeering, plaintiffs must also allege an enterprise distinct from the defendants in order to state a claim for a violation of section 1962(c). In *Bennett v. Berg, supra,* the court stated:

The RICO Act proscribes conduct in which one party, the "person" subject to the statute, acts upon an entity, the "enterprise," in such a manner that the enterprise's affairs are conducted through a pattern of racketeering.

685 F.2d at 1061 (footnote omitted). *See also Van Schaick v. Church of Scientology of California,* 535 F.Supp. 1125 (D.Mass. 1982); *Parnes v. Heinold Commodities, Inc.,* 548 F.Supp. 20 (N.D.Ill.1982). Section 1961(3) defines "person" to include any individual or entity capable of holding a beneficial interest in property. Section 1961(4) defines "enterprise" to include any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity. Plaintiffs argue that the complaint alleges that defendants are "persons" who formed an illegal association in fact constituting an "enterprise" through which they conducted a pattern of racketeering activity by denying valid insurance claims. The Court, however, fails to find any allegations in count IV to support this argument. Count IV merely alleges that "[d]efendants activities herein and in other instances amount to a pattern of racketeering activity as defined and prohibited in RICO ..."

Furthermore, plaintiffs must also allege an enterprise distinct from the pattern of racketeering activity in order to state a claim for a violation of section 1962(c). Even if the Court accepts plaintiffs' argument that they have properly alleged that defendants formed an enterprise to deny valid insurance claims, that allegation does not assert an enterprise with a separate economic existence from the alleged pattern of racketeering. In *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1980), the Supreme Court stated:

"The enterprise" is not "the pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the government.

In *Moss v. Morgan Stanley, Inc.,* 553 F.Supp. 1347, 1360 (S.D.N.Y.1983), the court observed:

... [T]he requirement of *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981), that the plaintiff must establish that the enterprise is an entity separate and apart from the pattern of racketeering activity makes clear that a violation of RICO is not set forth simply by alleging that the enumerated felonies of Section 1961 have been committed. If the enterprise that the plaintiff is relying upon is the criminal partnership of the defendants, the plaintiff must establish that there is something more to this partnership than the commission of the underlying felonies. For example, a developed infrastructure for the criminal partnership, used to help carry out its goals and enforce its aims, would suffice to give the group an adequate separate identity to meet the requirement of *Turkette; supra.* However, if all that the criminal partnership consists of is the commission of the requisite felonies, no violation of Section 1962 can be shown. Proof that the criminal partnership was an "on-going organization, formal or informal," with its associates functioning "as a continuing unit," *Turkette* at 583, 101 S.Ct. at 2528, will suffice to meet the enterprise requirement.

*See also Bennett v. Berg, supra* at 1059–61. Even if the Court construes plaintiffs' allegation that defendants' activities amount to a pattern of racketeering activities to be an allegation of an enterprise distinct from defendants, the Court concludes that plaintiffs have failed to allege an enterprise distinct from the alleged pattern of racketeering activities.

■ Finally, plaintiff must allege an injury caused by the RICO violation rather than by the commission of the predicate offenses in order to bring a claim for a violation of section 1962(c). Section 1964(c) provides in pertinent part that "[a]ny person injured in his business or property *by reason of a violation of section 1962* may sue therefor ..." (emphasis added). Based on an analogy to a similar provision in the antitrust laws, some courts have interpreted section 1964(c) to require that the injury to business or property be an injury to competitive or commercial interests. *See e.g., Van Schaick v. Church of Scientology of California, supra; North Barrington Development, Inc. v. Fanslow,* 547 F.Supp. 207 (N.D.Ill.1980). This approach has been criticized as inconsistent with RICO's purposes. *See Bennett v. Berg, supra* at 1058–59; Note, *Civil RICO: The Temptation and Impropriety of Judicial Restruction,* 95 Harv. L.Rev. 1101 (1982). Other cases, however, have used the same analogy to the antitrust laws to interpret section 1964(c) as requiring that plaintiff suffer "racketeering enterprise injury." *See Moss v. Morgan Stanley, Inc., supra; Harper v. New Japan Securities International, Inc.,* 545 F.Supp. 1002 (C.D.Cal.1982). *See also Landmark Savings & Loan v. Rhoades,* 527 F.Supp. 206 (E.D. Mich.1981) (alleged violation of 1962(a)). The Court adopts the reasoning of the latter line of cases and concludes that plaintiffs must allege a "racketeering enterprise injury" by reason of the alleged violation of section 1962(c). The Court finds Count IV of the complaint fails to allege such an injury in this case.

Since the Court concludes that count IV fails to state a claim, count IV may be dismissed pursuant to Fed.R.Civ.Pro. 12(b)(6). In their briefs in response to this motion, however, plaintiffs requested leave to amend count IV should the Court find its allegations insufficient. Rule 15, Fed.R. Civ.Pro., declares that leave to amend "shall be freely given when justice so requires." *See Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1963); *Bennett v. Berg, supra* at 1062. In this context, the Court will dismiss count IV and will grant plain-

tiffs twenty days from the date of this memorandum opinion to file an amended complaint. Defendants may challenge any amendments by timely filing the appropriate motion.

Count V of the first amended complaint alleges that defendants are liable for certain consequential damages that were a reasonable and foreseeable consequence of the breach of the insurance contract alleged in count I. Plaintiffs allege that they have suffered consequential damages in the form of attorneys' fees, litigation costs in an action commenced by Michigan National Bank against them, loan default costs, and damage to their credit reputation. Defendants move to dismiss this count on the ground that such damages were not a reasonable and foreseeable consequence as a matter of law.

■ The Michigan courts apply the well established rule of *Hadley v. Baxendale,* 9 Exch. 341, 156 Eng.Rep. 145 (1854), to actions for breach of contract. *See Kewin v. Massachusetts Mutual Life Ins. Co.,* 409 Mich. 401, 414–15, 295 N.W.2d 50 (1980). This rule states that damages recoverable for breach of contract are those that arise naturally from the breach or those that were within the contemplation of parties at the time the contract was made. 5 Corbin, Contracts § 1007. After reviewing the allegations in count V, the Court cannot conclude as a matter of law that the alleged consequential damages do not arise naturally from the breach or were not within the contemplation of the parties at the time the contract was made. The issue of whether plaintiff can recover the alleged consequential damages is a question of fact that will be determined by evidence showing whether these damages were within the contemplation of the parties at the time the contract was made. The Court will not dismiss count V.

Therefore, defendants' motion for partial summary judgment, which the Court has treated as a motion to dismiss, will be granted in part and denied in part. Count III will not be dismissed, but will be limited

to the extent set forth herein. Count IV will be dismissed, but plaintiffs will be granted twenty days from the date of this memorandum opinion to file an amended complaint. Count V will not be dismissed. An appropriate order shall be submitted.