SAFIE ENTERPRISES, INC v NATIONWIDE MUTUAL
FIRE INSURANCE COMPANY

Docket Nos. 77892, 77981. Submitted June 10, 1985, at Detroit.—
Decided October 21, 1985.

A fire damaged a car wash owned and operated by plaintiffs, Safie
Enterprises, Inc., a Michigan corporation, and Mahmoud
Safieddine, the principal owner of Safie Enterprises. Notice was
given to defendant, Nationwide Mutual Fire Insurance Com-
pany, which assigned defendant Robert F. Jones to investigate
the fire. Mr. Jones retained defendant Denenberg, Tuffley,
Thorpe, Bocan & Patrick, Attorneys-at-Law, to assist him. The
law firm assigned the case to defendant John Hopkins. Mr.

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Judgments § 62.
   Propriety of direction of verdict in favor of fewer than all defen-
   dants at close of plaintiff's case. 82 ALR3d 974. And see the
   annotations in the ALR3d/4th Quick Index under Final Judg-
   ment; Joint Parties.
[2] Am Jur 2d, Judgments §§ 1-8.
   See the annotations in the ALR3d/4th Quick Index under Judg-
   ments; Orders.
[3] Am Jur 2d, Judgments §§ 97-105.
   Entering judgment or decree of divorce nunc pro tunc. 19 ALR3d
   648.
[4] Am Jur 2d, Pleading §§ 230-237.
   See the annotations in the ALR3d/4th Quick Index under Judg-
   ment on Pleadings.
[5] Am Jur 2d, Insurance § 31.
   See the annotations in the ALR3d/4th Quick Index under Discrimi-
   nation; Insurance.
[6] Am Jur 2d, Interference §§ 3 *et seq.*
   See the annotations in the ALR3d/4th Quick Index under Interfer-
   ence with Contract (supp).
[7] Am Jur 2d, Interference § 50.
   Liability for interference with franchise. 97 ALR3d 890.
[8] Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 33-35.
   Am Jur 2d, Insurance § 1771.
   Modern status of intentional infliction of mental distress as inde-
   pendent tort; "outrage". 3 ALR4th 998.
[9] Am Jur 2d, Fraud and Deceit §§ 12-19.
   See the annotations in the ALR3d/4th Quick Index under Fraud
   and Deceit.

Safieddine's attorney, third-party defendant Paul J. Fealk, was notified by defendant Hopkins that Mr. Safieddine's claim was denied for his failure to present himself for examination under oath and his refusal to produce statutorily mandated documents. Plaintiffs brought an action in the Wayne Circuit Court against defendants, alleging that Nationwide breached the contract of insurance by failing to pay plaintiffs' claim, that defendants Hopkins and his law firm, along with defendants Jones and Nationwide, misrepresented the reason for denial of plaintiffs' claim and that the denial of the claim was actually undertaken as an act of discrimination in violation of plaintiff Safieddine's civil rights based on his national origin, Arab-Lebanese, or his religion, Muslim. Additional counts of the complaint alleged tortious interference with plaintiff Safieddine's business, contractual, economic and property interest, intentional infliction of emotional distress, and fraud, deceit and misrepresentation. Defendants Hopkins and his law firm filed a third-party complaint for indemnity against plaintiffs' counsel, Paul J. Fealk and Gary A. Colbert. The third-party defendants filed a motion for summary judgment, asserting that the third-party complaint failed to state a claim for which relief could be granted. On March 18, 1983, the court, Maureen P. Reilly, J., granted third-party defendants' motion for summary judgment. Although Judge Reilly granted summary judgment, she granted the third-party plaintiffs 45 days to file another complaint for contribution. Third-party plaintiffs did not file another complaint. The court, Harold M. Ryan, J., granted partial summary judgment for defendants Hopkins and the law firm on February 17, 1984. Plaintiffs appealed from the order granting partial summary judgment against them in favor of Hopkins and the law firm and the order granting final-order status to the order for summary judgment. Hopkins and the law firm appealed from the order granting final-order status to the order for summary judgment entered against them. The appeals were consolidated by the Court of Appeals. *Held:*

1. It is clear from the record that Judge Reilly intended the summary judgment against Hopkins and the law firm to be a final disposition on the issue of indemnification, although the order did not expressly state that it was final and that there was no just reason for delay in its entry. Judge Ryan thereafter amended the order to render it final and the amended order specifically stated that it was final as to the third-party plaintiffs and third-party defendants and there was no just reason for delay in making the order a final judgment. Defendants third-party plaintiffs argue that Judge Ryan had the authority

to finalize the order but erred in doing so because he failed to make a determination as to whether there was no just reason for delay. A court speaks through its orders and judgments. Even though a *verbal* express determination of no just reason for delay was not uttered by Judge Ryan during the proceedings, the specific determination was made in the final order.

2. The February 17, 1984, order did not expressly state that the order was final and that there was no just reason for delay. At the hearing held on April 6, 1984, however, Judge Ryan made it clear that it was his intention to have issued a final order on February 17, 1984. He issued an order on April 6, 1984, to that effect but did not state in the order that there was no just reason for delay. The Court of Appeals amended the April 6, 1984, order *nunc pro tunc* to correct the omission.

3. The trial court did not err in granting partial summary judgment to defendants Hopkins and the law firm for lack of a genuine issue of material fact. The Uniform Trade Practices Act does not create a private cause of action for discrimination. The facts alleged were not sufficient to constitute a violation of the Elliott-Larsen Civil Rights Act or to show a cause of action for breach of the fire insurance policy or tortious interference therewith or with plaintiffs' property and economic interests. Further, there is no recovery for emotional distress for breach of a contract of insurance. Finally, plaintiffs failed to allege the elements of fraud or misrepresentation.

Affirmed.

1. JUDGMENTS — FINAL JUDGMENT — COURT RULES.

Judgment for less than all the parties in a multi-party suit is not a final judgment where there is no express determination that there is no just reason for delay of judgment and no express direction for entry of final judgment in accordance with the court rules (GCR 1963, 518.2).

2. COURTS — JUDGMENTS — ORDERS.

A court speaks through its orders and judgments.

3. COURTS — MOTIONS AND ORDERS — *NUNC PRO TUNC* ORDERS.

A *nunc pro tunc* entry, in practice, is an entry made now of something which was actually previously done, to have effect as of the former date, not to supply omitted action by the court but to supply an omission in the record.

4. JUDGMENTS — SUMMARY JUDGMENT — GENUINE ISSUE OF MATERIAL FACT — COURT RULES.

A motion for summary judgment on the ground that there is no genuine issue as to any material fact tests whether there is

factual support for a claim and is to be tested by the pleadings, affidavits, depositions, admissions and other documentary evidence available to the court and is properly granted only where it is impossible for the claim asserted to be supported by evidence at trial (GCR 1963, 117.2[3]).

5. INSURANCE — CIVIL RIGHTS — TORTS — UNIFORM TRADES PRACTICES ACT.

The Uniform Trade Practices Act does not create a private cause of action for discrimination (MCL 500.2027; MSA 24.12027).

6. TORTS — CONTRACTS — TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS.

A prima facie case of tortious interference with contractual relations requires a showing that (1) a contract existed, (2) the contract was breached, (3) the defendant instigated the breach, and (4) defendant did so without justification.

7. TORTS — TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS.

The basic elements which establish prima facie a tortious interference with economic relations are the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the interferer, and an intentional interference causing a breach or termination of the relationship or expectancy and resulting in damage to the party whose relationship or expectancy has been disrupted.

8. DAMAGES — INSURANCE — EMOTIONAL DISTRESS — CONTRACTS.

Damages for emotional distress are not recoverable for a breach of an insurance contract.

9. FRAUD — ACTIONS.

To constitute actionable fraud it must appear that defendant made a material representation that was false, knowingly or recklessly without any knowledge of its truth as a positive assertion, with the intention that it be acted upon by plaintiff, and that plaintiff did rely thereupon to his injury.

*Paul J. Fealk,* for plaintiffs.

*Stein & Moran* (by *Michael C. Moran),* for defendants.

Before: DANHOF, C.J., and R. B. BURNS and V. J. BRENNAN, JJ.

V. J. BRENNAN, J. In Docket No. 77892, plaintiffs

Safie Enterprises, Inc., and Mahmoud Safieddine appeal from a final order entered on April 16, 1984, granting the motion for partial summary judgment of defendants John L. Hopkins (attorney) and Denenberg, Tuffley, Thorpe, Bocan & Patrick (law firm).

In Docket No. 77981, defendants and third-party plaintiffs (Hopkins and law firm) appeal from a final order entered on the same date which granted the motion for summary judgment on the third-party complaint of third-party defendants Fealk and Colbert (attorneys for plaintiffs). The cases have been consolidated on appeal.

On or about June 19, 1982, a fire damaged a car wash in Highland Park, Michigan, owned and operated by plaintiffs, Safie Enterprises, Inc., a Michigan corporation, and Mahmoud Safieddine, the principal owner of Safie Enterprise, Inc. Notice was given to defendant Nationwide Mutual Fire Insurance Company (Nationwide), which assigned its Special Claims Representative for Commercial Claims, defendant Robert Jones, to investigate the claim for fire loss. Mr. Jones retained a law firm, defendant Denenberg, Tuffley, and Thorpe, et al., to assist him, and within the law firm the case was assigned to defendant John Hopkins.

On August 24, 1982, plaintiff Safieddine was advised by letter that his claim was denied due to his failure to present himself for an examination under oath and his refusal to produce statutorily mandated documents.

In response, plaintiffs filed a complaint in Wayne County Circuit Court on September 24, 1982, which alleged that Nationwide breached the contract of insurance by failing to pay plaintiffs' claim, that defendants Hopkins and his law firm, along with defendants Jones and Nationwide, misrepresented the reason for denial of plaintiffs'

claim and that the denial of the claim was actually undertaken as an act of discrimination in violation of plaintiff Safieddine's civil rights, based on his national origin, Arab-Lebanese, and/or religion, Muslim. Additional counts of the complaint alleged tortious interference with plaintiff Safieddine's business, contractual, economic and property interests, intentional infliction of emotional distress, and fraud, deceit and misrepresentation.

Meanwhile, on October 19, 1982, defendants Hopkins and Denenberg, et al., filed a third-party complaint against plaintiffs' counsel, Paul J. Fealk and Gary A. Colbert. The third-party complaint alleged that "any damage suffered by plaintiff was a direct and proximate result of negligence, malfeasance, misfeasance and legal malpractice and that said third-party defendants failed to give proper legal advice to the plaintiff as to the methods and obligations of filing an insurance claim under Michigan Standard Fire Insurance Policy, MCL 500.2382", and claimed a right to indemnity.

On January 27, 1983, the third-party defendants filed a motion for summary judgment, asserting that the third-party complaint failed to state a claim for which relief could be granted. On February 25, 1983, Judge Maureen Reilly granted third-party defendants' motion for summary judgment, explaining that, if, at trial, defendant/third-party plaintiffs were held to be free from fault, then no damages would be assessed against them and, if they were at fault and held responsible for damages, they would be entitled to contribution from third-party defendants rather than common-law indemnity. Although Judge Reilly granted summary judgment, she permitted the third-party plaintiffs to file another complaint or an amended complaint to add the count of contribution.

On March 18, 1983, after the motion for clarifi-

cation of the original order of defendant/third-party plaintiffs (Hopkins and law firm) was heard, an order was entered granting summary judgment in favor of third-party defendants, which allowed 45 days for third-party plaintiffs to file another complaint for contribution if they so desired. They did not file another complaint. The case was thereafter reassigned to Judge Harold M. Ryan.

On January 24, 1984, defendants John Hopkins and Denenberg, et al., filed in the principal case a motion for partial summary judgment, which was heard and granted on February 17, 1984.

On March 20, 1984, third-party defendants sought (on behalf of plaintiffs Safie and Safieddine) to modify the March 18, 1983, order issued by Judge Reilly by having it designated as a final order pursuant to GCR 1963, 518.2. Argument on the motion to modify occurred together with the motion of defendants Hopkins and the law firm to have the granting of partial summary judgment of February 17, 1984, in their favor designated as a final order. Both motions were heard on April 6, 1984, at which time Judge Ryan granted final-order status to both orders.

On April 19, 1984, plaintiffs filed a claim of appeal from the order granting partial summary judgment against them in favor of Hopkins and the law firm and the order granting final-order status to the order for summary judgment (Docket No. 77892).

The defendants/third-party plaintiffs, Hopkins and the law firm, have also appealed the granting of final-order status to the order for summary judgment entered against them (Docket No. 77981).

The sole issue for our consideration in Docket No. 77981 is whether the trial court erred in amending the order for summary judgment (in

favor of third-party defendants) to render the order final under GCR 1963, 518.2.

At the time the March, 1983, order was finalized in March, 1984, GCR 1963, 518.2 provided:

".2 Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, *the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon express directions for the entry of judgment.* In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." (Emphasis added.)

This rule requires that the trial court expressly state in the judgment itself that the judgment is final and that "there is no just reason for delay". *Pauley v Hall,* 124 Mich App 255, 261; 335 NW2d 197 (1983), *lv den* 418 Mich 870 (1983). When Judge Reilly originally granted third-party defendants' motion for summary judgment, the order which was entered on March 18, 1983, was not a final judgment because it did not comply with the above court rule. This Court has held that there must be strict compliance with GCR 1963, 518.2. *Covello v Brammer,* 47 Mich App 395, 400; 209 NW2d 615 (1973).

It is clear, however, from the record that Judge Reilly did intend the summary judgment to be a final disposition on the issue of indemnification,

although the order did not expressly state that it was final and that there was no just reason for delay in its entry. Judge Ryan thereafter amended the order to render it final and the amended order specifically stated that it was final as to the third-party plaintiffs and third-party defendants and there was no just reason for delay in making the order a final judgment.

Defendants/third-party plaintiffs argue that Judge Ryan had the authority to finalize the order but erred in so doing because he failed to make a determination as to whether there was no just reason for delay. A court speaks through its orders and judgments. *People v Collier,* 105 Mich App 46; 306 NW2d 387 (1981), *lv den* 414 Mich 955 (1982). Even though a *verbal* express determination of no just reason for delay was not uttered by Judge Ryan during the proceedings, the specific determination was made; it appears in the signed order.

Defendants/third-party plaintiffs do not now contend that summary judgment against them on the issue of indemnification was improper. We also point out that defendants/third-party plaintiffs did not amend their complaint to state a cause of action for contribution. The finality of the order did not prejudice the defendants/third-party plaintiffs and it allowed the parties to proceed with the merits of the underlying case. If anything, any potential conflict of interest was avoided by rendering the order in question final.

Our disposition of the issues in Docket No. 77982 renders moot the question of contribution.

Plaintiffs first argue in Docket No. 77982 that the trial court erred in finalizing on April 6, 1984, the original February 17, 1984, order of summary judgment granted in favor of defendants. Our review of the record reveals that the February order did not expressly state that the order was

final or that there was no just reason for delay in entering the order. At the hearing held on April 6, 1984, however, Judge Ryan made it clear that it was his intention to have issued a final order on February 17, 1984. He issued an order on April 6, 1984, to that effect but did not state in the order that there was no just reason for delay. It is also clear that the parties intended the order to be final as to plaintiffs and defendants Hopkins and Denenberg, et al. (Counts I, II, IV, V, VI, and VII were dismissed against Hopkins and the law firm; Count III only involved defendant Robert Jones and is not in issue here).

In lieu of remanding to the trial court for further modification of the order to include the determination of no just reason for delay in entry of the order, and there was no just reason for delay, pursuant to MCR 7.216 we amend the lower court order of April 6, 1984, and render it corrected *nunc pro tunc* as per the requirements of GCR 1963, 518.2:

"A *nunc pro tunc* entry has been defined by the Michigan Supreme Court as:

" 'an entry made now of something which was actually previously done, to have effect as of the former date. Its office is not to supply omitted action by the court, but to supply an omission in the record of action really had, but omitted through inadvertence or mistake.' *Mallory v Ward Baking Co,* 270 Mich 91, 93; 258 NW 414 (1935).

"We conclude that the parties and the court intended the summary judgment to be final disposition between the parties, and thus the *nunc pro tunc* order rendering it final under GCR 1963, 518.2 was correct. Not only did the parties treat the judgment as final in the ensuing malicious prosecution case, but also the court which issued the judgment and presided over the subsequent suit clearly expressed its belief that the judgment was final." *Pauley v Hall, supra,* p 264. (Emphasis changed.)

Plaintiff's final argument is that the trial court erred in granting partial summary judgment to defendants Hopkins and Deneberg, et al., pursuant to GCR 1963, 117.2(3), now MCR 2.116(C)(10).

Under subrule 3, the court is asked to test the factual foundation of the suit. *Abel v Eli Lilly & Co,* 418 Mich 311, 322; 343 NW2d 164 (1984), *reh den* 419 Mich 1201 (1984), *cert den* — US —; 105 S Ct 123; 83 L Ed 2d 65 (1984).

The court shall consider the affidavits, "together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties * * *", GCR 1963, 117.3. See also *Partrich v Muscat,* 84 Mich App 724; 270 NW2d 506 (1978); MCR 2.116, subds (C)(10) and (G)(5). "The opposing party must show that a genuine issue of disputed fact exists. The test is whether the kind of record which might be developed, giving the benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ." *Linebaugh v Berdish,* 144 Mich App 750, 754; 376 NW2d 400 (1985). After reviewing the record, the court must be satisfied that it is impossible for the claim asserted to be supported by evidence at trial. *Freeman v Colonial Penn Ins Co,* 138 Mich App 444, 447; 361 NW2d 356 (1984).

In the instant case, the trial court determined that plaintiffs' claim of discrimination was not actionable under MCL 500.2027; MSA 24.12027 which states:

"Unfair methods of competition and unfair or deceptive acts or practices in the business of insurance include:

"(a) Refusing to insure, or refusing to continue to insure, or limiting the amount of coverage available to an individual or risk because of any of the following:

"(i) Race, color, creed, marital status, sex, or national

origin, except that marital status may be used to classify individuals or risks for the purpose of insuring family units."

That section is a part of the Insurance Code of 1956 and the Uniform Trade Practices Act, added by 1976 PA 273. While the code defines unfair methods of competition (MCL 500.2023-500.2027; MSA 24.12023-24.12027), empowers the Commissioner of Insurance to investigate complaints of violations (MCL 500.2028; MSA 24.12028), establishes a comprehensive system for the hearing procedure before the Commissioner (MCL 500.2029-500.2040; MSA 24.12029-24.12040), and provides for court review of administrative proceedings (MCL 500.2041; MSA 24.12041) and criminal penalties for violations (MCL 500.2069; MSA 24.12069), it does not create a right to file a private civil action. The trial court's determination was proper.

In *Barker v Underwriter at Lloyds, London,* 564 F Supp 352 (ED Mich, 1983), the court held that the Uniform Trade Practices Act did not create a right to bring a private action for violations of the Insurance Code:

"In the absence of any authority supporting the maintenance of a private cause of action founded upon another section of the UTPA, the Court concludes that section 230 of the Insurance Code of 1956, MCLA § 500.230, governs the enforcement of the UTPA and that plaintiff may not assert a private cause of action based on other alleged violations of the UTPA. See MCLA § 500.2028-.2050; *Fitzgerald v Aetna Casualty & Surety Co,* Civ. No. 81-10049 (E.D. Mich August 25, 1982)." (Emphasis added.) 564 F Supp 355.

The trial court also determined that the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA

3.548(101) *et seq.,* did not encompass the discrimination alleged in plaintiffs' complaint.

MCL 37.2301; MSA 3.548(301) defines a place of public accommodation:

" 'Place of public accommodation' *means a business,* or an educational, refreshment, entertainment, recreation, health, or transportation facilty, or institution of any kind, whether licensed or not, *whose* goods, *services,* facilities, privileges, advantages, or accommodations *are extended, offered, sold, or otherwise made available to the public."* (Emphasis added.)

MCL 37.2302; MSA 3.548(302) provides:

"Except where permitted by law, a person shall not:
"(a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status."

While the language of the act appears broad enough to encompass the insurance business and, thus, may create a legally cognizable claim, we believe that summary judgment was proper here, assuming *arguendo* that such a claim exists under the act. First, as stated by the trial judge, the intention behind the act was to insure equal access to places of accommodation and service. See also MCL 37.2101; MSA 3.548(101). By representing Nationwide Insurance Company, defendants Hopkins and the law firm were not offering a service to plaintiffs.

Second, no genuine issues of material fact existed on the issue of discrimination. At the hearing, it was brought out that Mr. Safieddine, in his deposition, acknowledge that he had no reason to believe that he was discriminated against by de-

fendants Hopkins or the law firm on the basis of his race or religion. In their depositions, Mr. Jones and Mr. Hopkins both testified that the plaintiffs' claim was denied because Mr. Safieddine failed to present himself for examination and to present documents. There are no facts in the record which indicate or from which an inference can be drawn that the reason for denial of plaintiff's claim was discriminatory.

Similarly, summary judgment was appropriate on Counts I, IV, V, VI and VII of plaintiffs' complaint. Count I of plaintiffs' complaint alleged a breach of the fire insurance policy (No. 93C-024-206-004), issued by defendant Nationwide Mutual Fire Insurance Company to plaintiffs. No specific allegations were made regarding defendant Hopkins or defendant law firm. Further, plaintiff acknowledges that, since he had no contract with these defendants, there was no privity of contract, and defendants Hopkins and Denenberg, et al., were entitled to judgment as a matter of law.

Count IV alleged that defendants Hopkins and Denenberg, et al., tortiously interfered with plaintiffs' insurance contract with Nationwide Insurance Company. The elements of intentional interference with a contractual relationship are 1) a contract existed, 2) which was breached, and 3) that breach was at the instigation of the defendant, 4) who did so without justification. *Derosia v Austin,* 115 Mich App 647, 653; 321 NW2d 760 (1982), *lv den* 417 Mich 949 (1983).

The record reveals that defendant Hopkins was retained by defendant Jones, the claims representative for defendant Nationwide, to assist Jones after it was learned that the fire may have been caused by arson. Jones told defendant Hopkins that he wanted plaintiff Safieddine examined under oath. A letter was sent to plaintiff Safieddine

stating such pursuant to the policy of insurance and a demand for production of various documents for inspection was included in the letter written on the defendant law firm's stationery. The name of defendant Nationwide Mutual was typed in the signature space.

It is clear to us that defendants Hopkins and Denenberg, et al., were acting as agents of defendant Nationwide at the direction of Nationwide when the first letter was sent, and defendants were following procedure outlined in the policy when requesting the documents and an examination under oath. After plaintiff Safieddine refused to appear for the examination, defendant Hopkins wrote to plaintiff explaining in detail that the claim was rejected because Safieddine did not comply with the statutory dictates of the policy. Jones's deposition testimony reveals that he consented to that letter, and Hopkins's testimony indicates that Jones told him to deny the claim for that particular reason. Therefore, it is our opinion that there was no genuine issue of material fact as to whether the breach of contract (if there was a breach) was at the instigation of defendants Hopkins and Denenberg, et al. It was not. Furthermore, there was no genuine issue of material fact on element number 4 as stated in *Derosia, supra.* Procedurally, denial of the claim was proper. Thus, dismissal of Count IV was indeed proper.

Similarly, in Count V, defendants were entitled to summary judgment on plaintiffs' claim that their conduct tortiously interfered with the property and economic interests of plaintiffs. In *Wilkerson v Carlo,* 101 Mich App 629, 632; 300 NW2d 658 (1980), *lv den* 411 Mich 984 (1981), our Court set forth the elements of this tort which are 1) existence of a valid business relationship, 2) which is known to the defendant, and 3) an intentional

interference with that relationship, 4) which causes the termination of the relationship, 5) resulting in damage. 101 Mich App 632. Here, the record is devoid of any facts that would show an intentional interference with the relationship between plaintiffs and Nationwide, which caused a termination of the relationship by defendants Hopkins and Denenberg, et al.

In Count VI, plaintiffs asserted that the defendants intended to cause plaintiff Safieddine emotional distress. In *Kewin v Massachusetts Mututal Life Ins Co,* 409 Mich 401; 295 NW2d 50 (1980), *reh den* 409 Mich 1116 (1980), the Michigan Supreme Court held that damages for emotional distress are not recoverable for a breach of contract of insurance. Furthermore, Mr. Safieddine testified at his deposition that he did not believe that defendant Hopkins intended to cause him any emotional distress. Therefore, plaintiff's claim for intentional infliction of emotional distress as a separate tort action and any claim for damages for emotional distress are not supported by any facts. Defendants were entitled to judgment on this count as a matter of law.

Finally, Count VII of plaintiffs' complaint, which they fail to address in their brief, was for fraud, deceit and misrepresentation. The elements constituting actual fraud or misrepresentation are set forth in *Higgins v Kenneth R Lawrence, DPM, PC,* 107 Mich App 178, 184; 309 NW2d 194 (1981). Plaintiffs herein have not alleged these elements in their complaint, and we agree with the defendants that plaintiffs did not, in fact, take any action in reliance upon the alleged misrepresentation. Thus, this claim totally lacks merit.

Affirmed as to Docket No. 77981. Affirmed as to Docket No. 77892. We retain no further jurisdiction.