**Sam N. FARLOW, an individual, and Susan S. Farlow, an individual, Plaintiffs–Appellants,**

v.

**UNION CENTRAL LIFE INSURANCE COMPANY, an Ohio corporation, Peterson Financial Advisory, Inc., an Alabama corporation, and Chris J. Peterson, etc., Defendants–Appellees.**

No. 88–7513.

United States Court of Appeals, Eleventh Circuit.

June 6, 1989.

William S. Pritchard, III, Pritchard, McCall, Jones, Spencer & O'Kelley, Birmingham, Ala., Julian P. Hardy, Jr., Alexander W. Jones, Jr., Birmingham, Ala., for plaintiffs-appellants.

J. Mark Hart, Spain, Gillon, Tate, Grooms & Blan, John S. Civils, Jr., Huie, Fernambucg and Stewart, Jack M. Beard, Birmingham, Ala., for defendants-appellees.

Before TJOFLAT and HATCHETT, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this interlocutory appeal, we affirm the district court's determination that state law claims for fraudulent misrepresentation, negligence, and violation of the Alabama "twisting" statute (27–12–6 Code of Alabama) arising from the sale of an insurance policy are preempted by the Employee Retirement Income Security Act (ERISA).

## FACTS

Sam Farlow is a shareholder, the president, and a member of the board of directors of Pace–Plus, Inc. (collectively the Farlows). Sam Farlow and his wife, Susan Farlow, are designated beneficiaries under Pace–Plus's employee health insurance plan which provides coverage for Pace–Plus's employees and their spouses. Prior to July, 1987, Pace–Plus's employee benefit plan provided maternity and pregnancy coverage.

The Farlows allege that during July, 1987, Chris J. Peterson, acting for himself, Peterson Financial Advisory, Inc., and Union Central Life Insurance Company, contacted Sam Farlow to solicit a new group health and employee term life insurance plan underwritten by Union Central Life Insurance Company. The Farlows further allege that Peterson made the following representations to induce them to purchase the new policy: (1) it provided the same coverage but with a lower deductible, (2) it would promote their best interests, and (3) the premiums differed insignificantly from Pace–Plus's former policy's premiums. In November, 1987, after learning that Susan Farlow was pregnant, the Farlows discovered that the Union Central policy did not provide maternity or pregnancy coverage even though Pace–Plus's previous policy provided such coverage.

## PROCEDURAL HISTORY

On April 5, 1988, the Farlows filed suit in an Alabama state court against Peterson, Peterson Financial Advisory, Inc. and Union Central Life Insurance Co. (collectively Union Central). The Farlows' complaint alleged three state law causes of action: fraudulent misrepresentation, negligence, and a "twisting" statute violation.[1] The Farlows sought $50,000 in compensatory damages, $5,000,000 in punitive damages, and attorney's fees and costs.

On May 2, 1988, Union Central removed the case to the district court for the Northern District of Alabama. Union Central simultaneously moved to strike the state law claims and to strike the Farlows' demand for a jury trial. On May 17, 1988, the Farlows moved to remand the action to state court, arguing that ERISA did not preempt their state law claims. On June 6, 1988, finding that ERISA preempted the Farlows' state law claims, the district court denied the Farlows' motion to remand and granted Union Central's motion to strike the state law claims and the jury demand.

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. The Alabama "twisting" statute provides:
   No person shall make or issue, or cause to be made or issued, any written or oral statement misrepresenting or making misleading incomplete comparisons as to the terms, conditions or benefits contained in any policy for the purpose of inducing, or attempting or intending to induce, the policyholder to lapse, forfeit, surrender, retain, exchange or convert any insurance policy.
   Ala.Code § 27–12–6 (1977).

In addition, the court granted the Farlows leave to amend their complaint to state an ERISA claim.

On June 23, 1988, the Farlows moved for reconsideration of the district court's order striking the state law claims and the jury demand. On June 24, 1988, the district court denied the Farlows' motion for reconsideration. While the court noted that the twisting statute likely did not create a private cause of action, the court relied on ERISA preemption to deny the Farlows' motion. The district court subsequently granted the Farlows leave to amend their complaint to add an ERISA claim and to add Pace–Plus as a plaintiff.

On July 8, 1988, the Farlows again moved for reconsideration of the court's dismissal of their twisting statutes claim. On July 28, 1988, the district court denied this motion and entered final judgment pursuant to Fed.R.Civ.P. 54(b) on its order striking the three state law claims and the jury demand.

## CONTENTIONS

The Farlows contend that the district court erroneously dismissed their state law claims and jury demand. According to the Farlows, ERISA does not preempt their misrepresentation or negligence claims because they have not made a claim for benefits, and their state law claims do not involve the administration of benefits under the Union Central benefit plan.

Turning to the twisting claim, the Farlows contend that the Alabama twisting statute creates a private cause of action. The Farlows further contend that even if ERISA's preemption clause applied to such claim, ERISA's savings clause exempts the claim from preemption because the twisting statute regulates insurance. *See* 29 U.S.C.A. § 1144(b)(2)(A) (1985) (laws regulating insurance excepted from ERISA preemption).

Union Central contends that the district court properly dismissed the three state law claims and the jury demand because ERISA preempts such claims. In addition, Union Central contends that ERISA's savings clause does not exempt the Farlows' twisting claim because the twisting statute does not constitute a statute which regulates insurance. Finally, even if ERISA does not preempt the twisting statute claim, Union Central contends that the court properly dismissed such claim because Alabama's twisting statute does not create a private cause of action.

## ISSUES

The Farlows raise the following issues on appeal: (1) whether ERISA preempts their negligence, misrepresentation, and twisting claims and (2) whether the Alabama twisting statute creates a private cause of action.

## DISCUSSION

### A. *Misrepresentation and Negligence Claims*

■ The district court found the scope of ERISA preemption sufficiently broad to encompass the Farlows' misrepresentation and negligence claims. We agree.[2]

ERISA preempts all state laws which "relate to any employee benefit plan." 29 U.S.C.A. § 1144(a) (1985). According to the Supreme Court, we must interpret the phrase "relate to" under its broad common sense meaning so that a state law "relates to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490, 501 (1983). Under this liberal interpretation, the Court has held that ERISA preempted certain employees' state common law tort and contract actions. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (ERISA preempted

2. We do not address whether the Pace–Plus plan constitutes an ERISA benefit plan because the Farlows do not challenge the district court's preemption decision on such ground. Rather, in their May 17, 1988 motion to remand, the Farlows implicitly concede that the plan constitutes an ERISA plan: "The claims are not for benefits under the insurance policy which arguably may be considered an 'employee benefit plan' under ERISA."

claims of tortious breach of contract, breach of fiduciary duties and fraud in the inducement arising from the improper processing of a claim).

Adhering to the Supreme Court's expansive view of ERISA preemption, our court has not limited ERISA's preemption to laws "dealing with the particular subject matters covered by ERISA, such as reporting, disclosure and fiduciary responsibility." *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1469 (11th Cir.1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987). Rather, we have held that ERISA preempts state laws even if the "laws do not expressly concern employee benefit plans" but rather "amount only to indirect regulation of such plans." *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1563 (11th Cir. 1987); *Clark v. Coats and Clark, Inc.*, 865 F.2d 1237, 1243–44 (11th Cir.1989).

■ Recognizing that ERISA can preempt general state common law causes of action, the problem becomes determining when a party's use of such a state law "relates to" an ERISA benefit plan. According to our recent decisions, a state law cause of action "relates to" an employee benefit plan if the employer's conduct giving rise to such claim was not "wholly remote in content" from the benefit plan. *Clark*, 865 F.2d at 1243. A claim does not, however, relate to a plan even though the employer's conduct occurred contemporaneously with an alleged ERISA violation, unless the facts relating to the employee's failure to receive benefits are relevant to the state law claim. *Clark*, 865 F.2d at 1245.

A comparison of two recent cases illustrates the distinction between when a state law claim relates to a plan and when a claim is wholly remote in content from a plan. *See Howard v. Parisian, Inc.*, 807 F.2d 1560 (11th Cir.1987); *Clark v. Coats & Clark Inc.*, 865 F.2d 1237 (11th Cir.1989). In *Howard*, an employee asserted a claim of intentional infliction of emotional distress against his employer. The employee alleged that his employer intended to cause emotional harm by refusing to pay benefits under an ERISA plan. Our court held that

ERISA preempted this claim because the employer's conduct in *Howard* was not wholly remote in content from the refusal to pay benefits. *Howard*, 807 F.2d at 1564.

Despite the *Howard* court's decision, two years later we held that ERISA did not preempt an employee's claim of intentional infliction of emotional distress. *Clark v. Coats & Clark, Inc.*, 865 F.2d 1237 (11th Cir.1989). In *Clark*, the employee's claim for emotional distress related only to his termination of employment, but not to the denial of benefits as in *Howard*. *Clark*, 865 F.2d at 1243 (Clark claimed that "his employment termination was carried out in a manner which was intended to inflict severe emotional distress upon him."). Thus, the *Clark* court found no preemption because "the only connection between Clark's tort claim and ERISA is that the conduct arose in a factual setting which overlapped that of Clark's ERISA claim." *Clark*, 865 F.2d at 1245.

The Farlows' claims more closely resemble the employee's claim in *Howard*. The Farlows's complaint alleges that Peterson negligently failed to disclose that the Union Central plan did not provide maternity and pregnancy coverage and fraudulently misrepresented that the Union Central plan's coverage was coextensive with Pace Plus's former plan's coverage. As in *Howard*, the conduct alleged in these claims is not only contemporaneous with Union Central's refusal to pay benefits, but the alleged conduct is intertwined with the refusal to pay benefits. Finding the Farlows' state law claims not wholly remote in content from the Union Central plan, we reject the Farlows' contention that simply because their claims involve misconduct in the sale and implementation of the Union Central plan, their claims do not relate to the plan.

Consequently, we hold that ERISA preempts the Farlows' misrepresentation and negligence claims.

### B. *The Twisting Statute Claim*

■ The Farlows contend that the district court improperly dismissed their twisting claim because the twisting statute creates a private cause of action, and ERISA

does not preempt this claim. Contrary to the Farlows' contentions, we agree with the district court that the twisting statute does not create a private cause of action.[3]

The twisting statute constitutes a single section of the Alabama Trade Practices Law. *See* Ala.Code § 27–12–1 to § 27–12–24 (1977). More specifically, the twisting statute prohibits oral misrepresentations and misleading comparisons of insurance policies. Ala.Code § 27–12–6 (1977). The statute does not, however, specify who has authority to enforce a violation. Therefore, we must look to the Trade Practices Law as a whole to determine whether individuals may assert a twisting claim.

Contrary to the Farlows' contention, no section of the Trade Practices Law creates a private cause of action. The Farlows argue that the following section establishes a private cause of action:

> No order of the Commissioner pursuant to this trade practices law or order of court to enforce it shall in any way relieve or absolve any person affected by such order from any other liability, penalty or forfeiture under law.

Ala.Code § 27–12–18(h) (1977). We disagree. This provision merely preserves individuals' rights under other statutory and common law causes of action. Furthermore, after reviewing the Act, we do not find any section which expressly creates a private cause of action.

Absent any specific provision creating a private cause of action, we turn to the legislative intent to determine whether an implied private cause of action exists. At the outset of our examination of the legislative intent, we note that

> federal courts should be reluctant to read private rights of action in state laws where state courts and state legislatures have not done so. Without clear and specific evidence of legislative intent, the creation of a private right of action by a federal court abrogates both the prerogatives of the political branches and the

obvious authority of states to sculpt the content of state law.

*A & E Supply Co. v. Nationwide Mutual Fire Ins. Co.*, 798 F.2d 669, 674 (4th Cir. 1986), *cert. denied*, 479 U.S. 1091, 107 S.Ct. 1302, 94 L.Ed.2d 158 (1987). Rather than indicating a clear and specific legislative intent to create a private cause of action, our examination of the Alabama Trade Practices Law in its entirety reveals a contrary intent.

The Alabama Trade Practices Law establishes a scheme of comprehensive rules, regulations, and penalties for violations of these rules. The Act delegates its enforcement to an insurance commissioner by specifically granting the commissioner several remedies and establishing the procedures for pursuing such remedies. *See, e.g.*, Ala. Code. §§ 27–12–10(a) & 27–12–12(b) (1977) (revocation and refusal to issue certification of authority or license); Ala.Code § 27–12–18 (1977) (procedure for commissioner to bring charges, conduct hearing and issuing cease and desist orders); Ala. Code § 27–12–19 (1977) (procedure for commissioner to serve statements, notices and orders); Ala.Code § 27–12–20 (1977) (review of commissioner's cease and desist order); and Ala.Code § 27–12–21 (1977) (procedure for commissioner to restrain unfair methods of competition). The establishment of these specific administrative procedures and enforcement provisions implies that the Alabama legislature intended to make such remedies exclusive. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) (where statute expressly provides particular remedies courts should hesitate to imply others); *A & E Supply Co.*, 798 F.2d at 675. ("if the legislature has carefully chosen an enforcement mechanism to accomplish the legislative purpose by accommodating conflicting interests, the integrity of the overall statutory scheme requires restraint in implying private actions.") (quoting Note, *Implied Causes of*

---

**3.** Because we conclude that the twisting statute does not create a private cause of action, we do not address whether ERISA preempts this claim.

*Action in the State Courts,* 30 Stanford L.Rev. 1243, 1253 (1978)).

In addition, other states' interpretation of similar acts support our position. Because Alabama's Trade Practice Law follows the model unfair practices legislation, we have examined other states' interpretations of their trade practices laws which mirror the model act. Ala.Code § 27–12–1 (1977) (purpose is to regulate trade practices in accordance with the intent of Congress as expressed in the Insurance Regulation Act). After conducting such an examination, we find that nearly every state which enacted legislation patterned after the model unfair practice legislation has refused to imply a private cause of action.[4]

Shifting our focus to the Alabama Supreme court's discussion of the twisting statute, the Farlows argue that the Alabama Supreme Court implicitly recognized a private cause of action in *Jarrard v. Nationwide Mutual Ins. Co.,* 495 So.2d 584 (Ala.1986). Contrary to the Farlows' assertion, the *Jarrard* court merely held that a question of fact existed regarding whether a statement was actionable. In reaching this conclusion, the Alabama Supreme Court stated that the twisting statute eliminates the defense of "puffery" in the context of a fraud claim for comparing insurance policies. *Jarrard,* 495 So.2d at 586. Thus, the *Jarrard* decision does not support the Farlows' position.

Finally, as the district court noted, the Alabama Code provides broad protection for fraud for individual citizens. *See* Ala. Code §§ 6–5–101 to 6–5–104 (1975). Be-

cause liability for fraud may exist even when the individual innocently or mistakenly misrepresents a policy, implying a cause of action under the twisting statute would merely duplicate already existing fraud causes of action under Alabama law. *See* Ala.Code § 6–5–101 (1975) (legal fraud actionable even when innocently or mistakenly occurring). Therefore, we conclude that no private cause of action exists under the twisting statute.

## CONCLUSION

For the reasons discussed above, we affirm the district court's decision to strike the negligence and fraudulent misrepresentations claims because ERISA preempts such causes of action. Furthermore, we affirm the district court's striking of the twisting statute claim because the twisting statute does not create a private cause of action. Finally, because we affirm the dismissal of these claims, we affirm the striking of the Farlows' demand for a jury trial.

AFFIRMED.

**4.** *See, e.g., Cowdell v. Cambridge Mut. Ins. Co.,* 808 F.2d 160 (1st Cir.1986) (applying Rhode Island law); *A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.,* 798 F.2d 669 (4th Cir.1986) (applying Virginia law); *Keehn v. Carolina Cas. Ins. Co.,* 758 F.2d 1522 (11th Cir.1985) (applying Florida law); *Greene v. Truck Ins. Exchange,* 114 Idaho 63, 753 P.2d 274 (Idaho App.1988); *Scroggins v. Allstate Ins. Co.,* 74 Ill.App.3d 1027, 30 Ill.Dec. 682, 393 N.E.2d 718 (1979); *Sofie Enterprises, Inc. v. Nationwide Mut. Fire Ins. Co.,* 146 Mich.App. 483, 381 N.W.2d 747 (1985)); *Morris v. American Family Mut. Ins. Co.,* 386 N.W.2d 233 (Minn.1986); *Protective Service Life Ins. Co. v. Carter,* 445 So.2d 215 (Miss.1983); *Retail Clerk's Welfare Fund v. Continental Cas. Co.,* 71 N.J.Super. 221, 176 A.2d 524 (1961);

*Strack v. Westfield Companies,* 33 Ohio App.3d 336, 515 N.E.2d 1005 (1986); *D'Ambrosio v. Pennsylvania National Mutual Cas. Ins. Co.,* 494 Pa. 501, 431 A.2d 966 (1981); *Wilder v. Aetna Life & Cas. Ins. Co.,* 140 Vt. 16, 433 A.2d 309 (1981); *Kranzush v. Badger State Mut. Cas. Co.,* 103 Wis.2d 56, 307 N.W.2d 256 (1981); *Patterson v. Globe American Casualty Co.,* 101 N.M. 541, 685 P.2d 396 (Ct.App.1984); *Cohen v. New York Property Ins. Underwriting Ass'n.,* 65 A.D. 2d 71, 410 N.Y.S.2d 597 (1978); *Russell v. Hartford Casualty Ins. Co.,* 548 S.W.2d 737 (Tx.Civ. App.1977); *but cf. Sparks v. Republic Nat'l Life Ins. Co.,* 132 Ariz. 529, 647 P.2d 1127 (1982); *Jenkins v. J.C. Penney Casualty Ins. Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981).