OPINION OF THE COURT
Edward H. Lehner, J.
The basic legal issue posed on this motion for summary judgment is whether the plaintiff, a prior holder in due course of notes, is upon reacquisition thereof entitled to the benefit of the "shelter” provision of UCC 3-201 (1) when the party who transferred the notes to it may not be entitled to such benefit by reason of the claim that the transferor was a party to a fraud on the maker and had notice of a defense to the notes when it had previously held them.
Plaintiff renews its motion for summary judgment on 40 promissory notes executed by the defendants. Counsel stipulated that the essential facts for the separate actions against defendants are substantially the same. Consequently the actions are consolidated herein for disposition.
Defendants are limited partners in 600 Grant Street Associates Limited Partnership (the Partnership) which was organized to acquire, own and operate a commercial office building in Pittsburgh, Pennsylvania. In connection with the purchase of their interests, defendants made cash down payments and executed promissory notes payable to the order of the Partnership for the balance.
Defendants allege that they were induced to invest in the Partnership as a result of certain misrepresentations made by the sponsor of the transaction, Integrated Resources, Inc. (Integrated), which allegedly failed to advise defendants of the presence of asbestos throughout the building and misrepresented that at the time of the sale there were 2.23 million square feet of vacant office space in downtown Pittsburgh, when in fact the vacant space was in excess of 12 million square feet.
In June and September 1986, plaintiff Manufacturers Hanover Trust Company (Manufacturers) acquired 39 of the promissory notes as collateral for an $80,000,000 loan made to the Partnership by it and five other banks for which it acted as agent. The notes were delivered to Manufacturers Hanover Agent Bank Services Corporation, as agent for Manufacturers.
Manufacturers alleges that in 1986 it accepted only the notes of limited partners who had met certain financial criteria, and then only if the notes were not in default. It also *653 asserts that the Partnership represented and warranted that none of the notes were overdue or had been dishonored and that no defense against or claim to the notes existed. Manufacturers also allegedly conducted a credit check of each limited partner who had executed a note.
Plaintiff asserts that at the time of the delivery of the notes to it in 1986, 37 were indorsed in blank by an officer of Marine Midland Bank, N.A. in the following form:
"pay to the order of
WITHOUT RECOURSE MARINE MIDLAND BANK, N.A.
by (signature of officer)”.
Two of the notes were similarly indorsed in blank by an officer of Security Pacific National Bank. Previously the notes had been indorsed by the Partnership to these two banks.
An exception to this scenario was the note made by defendant Russell D. Robinson, which was pledged in 1987 and indorsed by the Partnership directly to Manufacturers.
Defendants were promised by the Partnership and Integrated in documents dated December 5, 1984 and March 15, 1985 that in the event of a reduction in the highest marginal Federal income tax bracket, the purchase price of the property would be reduced, and the limited partners would be entitled to a reduction of their required capital contribution to the Partnership. The October 1986 tax code amendments effected a reduction in such tax bracket, thereby triggering the capital reduction. The limited partners were notified that as a result they would receive a rebate of $21,552 per unit, which would be paid in annual installments in March 1988, 1989, 1990 and 1991. Integrated filed for bankruptcy, thereafter, in February 1990 and the promised capital reduction payments for the years 1990 and 1991 were never made.
In August 1990 Manufacturers removed the notes from its vault to inventory them, allegedly in anticipation of litigation. For reasons that are unclear, the removing bank officers then allegedly stamped on the 39 notes held in blank "600 grant street associates limited partnership” in the blank space of each of the above-mentioned indorsements, and then placed the following indorsement on these notes:
"600 Grant Street Associates Limited Partnership without recourse By: Manufacturers Hanover Trust
*654 Company, as Agent, Attorney-in-fact for 600 Grant Street Associates Limited Partnership By: (signature of officer)
Vice President”.
Claiming that the notes were negotiated to it in 1986 and that it then took possession of them for value, in good faith and without knowledge of any claim or defense, Manufacturers moved for summary judgment asserting that it was a holder in due course thereof. Defendants countered that Manufacturers, as the lead lender, must have known in 1986 of Integrated’s misrepresentations and of the capital reduction program, and in 1990 should have known of the default thereunder following public disclosure of Integrated’s financial difficulties and subsequent bankruptcy. Defendants alleged that they are entitled to offset the unpaid portion of such reduction against the balance owing on the notes and that the misrepresentations constituted a defense to their obligations thereon.
By order dated November 15, 1991, this court denied the motion for summary judgment, without prejudice to renew, finding that defendants were entitled to further discovery. Further depositions having been conducted, plaintiff now renews its motion.
Although defendants assert that they still have not yet had adequate discovery, the court is not aware of any application by them for additional examinations. As this motion was argued over one year after the court’s prior decision, it does not appear that the same claim of insufficient discovery can or should prevent a decision on the motion at this time.
As the result of the discovery undertaken it appears that (except with respect to the Robinson note) Manufacturers took possession of the notes in 1986 by reason of its agent’s acceptance of the notes indorsed in blank by Marine Midland Bank or Security Pacific National Bank and did so as a holder in due course (UCC 3-302). Under UCC 1-201 (20) a "holder” includes "a person who is in possession of * * * an instrument * * * indorsed * * * in blank”.
However, this suit is based on plaintiffs current possession of the notes and the question arises, therefore, whether Manufacturers retained its holder in due course status after the 1990 indorsements.
Manufacturers offers no logical explanation as to why the *655 notes indorsed in blank by the aforesaid banks were then indorsed to the Partnership, which then (acting through Manufacturers as its agent) indorsed the notes in blank. The suggestion that security was the reason would not seem logical since the notes continued to have blank indorsements.
Manufacturers contends that its 1986 holder in due course status was unaffected by the 1990 indorsements because there was no delivery of the instruments to the Partnership. However, Manufacturers functioned in a dual role, acting for itself and as the Partnership’s agent. Once the notes were indorsed in favor of the Partnership, only the Partnership had the right to negotiate them. Manufacturers accomplished this by receiving the notes as the Partnership’s agent and indorsing them in blank in that same capacity. The indorsement stamp used states that Manufacturers was signing as "Agent, Attorney-in-fact for 600 Grant Street Associates Limited Partnership”. Therefore, albeit only for a brief period, the notes were upon such negotiation owned by the Partnership, although if the allegations against it are proven, not as a holder in due course.
What then was Manufacturers’ status when the notes were then renegotiated to it? It contends that even if it did not reacquire the notes as a holder in due course in 1990, summary judgment is still appropriate under the "Shelter Rule” embodied in UCC 3-201 (1), which provides: "Transfer of an instrument vests in the transferee such rights as the transferor has therein, except that a transferee who has himself been a party to any fraud or illegality affecting the instrument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from a later holder in due course.” Under the Shelter Rule, a transferee obtains the rights, not the status, of the prior holder in due course.[1]
The Shelter Rule is designed to guarantee a holder in due course a ready market for its negotiable instrument, the court *656 in Finalco v Roosevelt (235 Cal App 3d 1301, 1305-1306, 3 Cal Rptr 2d 865, 867 [1991]) observing: "Thus, when a transferee takes an instrument from a holder in due course the transferee takes free from all claims and defenses to the same extent as did the holder in due course even if the transferee is aware of those claims and defenses. If this was not the rule, a holder in due course could be deprived of a market for the instrument if the obligor widely disseminated notice of a claim or defense * * * [which would] harm the holder in due course by destroying the market for the instrument.” (See also, 4 Hawkland and Lawrence, UCC Series § 3-201:03; National Union Fire Ins. Co. v Woodhead, 917 F2d 752, 758 [2d Cir 1990] ["The purpose behind this shelter principle is to protect the holder in due course 'so that he can sell what he has purchased’.”]) The statute therefore permits a holder with notice of defenses to acquire the rights of a holder in due course.
The Shelter Rule, however, does not necessarily protect Manufacturers under the facts at bar. When the Partnership acquired titled to the notes in 1990, it was allegedly a party to the asserted fraud and a prior holder who had notice of defenses against the notes. Therefore, if the allegations against it are proven, the Partnership is not eligible for the Shelter Rule protection or holder in due course status. Hence, the question arises whether Manufacturers can be sheltered under UCC 3-201 (1) if its transferor is specifically denied that protection.
In 4 Hawkland and Lawrence (op. cit., § 3-201:05) the authors state: "A question existed under the NIL and exists under the Code as well as to whether a purchaser from a party who was denied protection of the shelter provision because he was a party to a fraud or illegality (or, under the Code, had notice of a defense or claim) obtains merely the rights of his transferor or whether he can succeed to the rights of a previous holder in due course. Assume A made a note payable to B, who with notice of a defense transferred the note to C, a holder in due course. If C transferred the note to B who resold it to D, would D be entitled to C’s rights or is he limited to B’s rights? Under the NIL, it was unclear whether the exclusion from the shelter provision was personal to B or extended to anyone deriving title from B. Section 58 of the NIL provided that any holder except a party to fraud or illegality who derived title through a holder in due course obtained the rights of the holder in due course. From this it *657 could be implied that only B himself was denied the protection. Apparently B could thus transfer the instrument to a relative who would then take free of the claim or defense. Any such result would be unfortunate. Fortunately, the language of section 3-201 militates in favor of the contrary result. Under subsection 3-201 (1) the transfer vests in the transferee, D, all of the rights of his transferor, B. Since B was not entitled to C’s rights as a holder in due course, D would not be entitled to these rights either.”
Since the same policy consideration in favor of a holder in due course does not apply to a party to a fraud or a prior holder who had knowledge of defenses, if the Partnership is found to have fallen within the exceptions of the Shelter Rule, it is consistent with the statutory policy to prohibit it from improving its position and the market for its instrument by also denying any transferee acquiring the notes from it (in this case Manufacturers) shelter under the statute. The fact that Manufacturers was a prior holder in due course does not aid it under the language of the section.[2]
Why Manufacturers indorsed the notes as it did in 1990 remains a mystery. Absent such indorsements, it could, based on the facts set forth in the submitted papers, enforce the notes as a holder in due course. But, as a consequence of its inexplicable unilateral actions it faces losing that substantive right, without having procured any seeming benefit from the indorsements, as the court finds no statutory provision governing commercial paper that entitles plaintiff, as a matter of law, to the rights of a holder in due course under the unusual circumstances presented herein.
Accordingly, as there are numerous questions of fact concerning the Partnership’s alleged fraudulent acts and Manufacturer’s knowledge in 1990 of asserted defenses and claims, the motion for summary judgment, except as to the Robinson note, is denied.
With respect to the Robinson note, which was indorsed directly to plaintiff in 1987, there is no evidence that plaintiff then had knowledge of any defense or infirmity with respect thereto, and thus it became a holder in due course upon *658 acquiring the note. Consequently, plaintiff is entitled to summary judgment against Robinson for the outstanding principal on the note, plus interest, with the claim for attorneys’ fees to be severed for an assessment of damages after the filing of a note of issue and statement of readiness.

. This distinction is significant. If a prior holder in due course had dealt with the obligor on the instrument, it would be subject to the obligor’s defenses despite being a holder in due course (see, UCC 3-305 [holder in due course takes the instrument free from defenses of any party to the note except those with whom he has dealt], 3-201). A transferee acquiring the right of such a prior holder in due course under the Shelter Rule would likewise be subject to the obligor’s defenses. In contrast, the transferee who acquired the status of a holder in due course in his own right would have taken free of such defenses (UCC 3-305, 3-201).

. Nor does UCC 3-208 offer plaintiff any relief. That provision is relevant to the cancellation of prior indorsors’ liabilities and is inapplicable here.