■ FIRST TRANSCAPITAL CORPORATION, Appellant-Respondent, v KING UMBERTO, INC., et al., Respondents-Appellants. [625

NYS2d 294] —In an action to recover on promissory notes, the plaintiff appeals from so much of a judgment of the Supreme Court, Nassau County (Burke, J.), entered June 15, 1993, as, after a nonjury trial, dismissed its first and second causes of action, and the defendants cross-appeal from so much of the same judgment as is in favor of the plaintiff and against them on the plaintiff's third cause of action in the principal sum of $36,024.75.

Ordered that the defendants' cross-appeal is dismissed for failure to perfect the same in accordance with the rules of this Court (22 NYCRR 670.8); and it is further,

Ordered that the judgment is reversed insofar as appealed from, on the law and the facts, with costs, the plaintiff's first and second causes of action are reinstated, and the matter is remitted to the Supreme Court, Nassau County, for the entry of an appropriate amended judgment in favor of the plaintiff and against the defendants, after a hearing as to the amount of damages to which the plaintiff is entitled.

The plaintiff First Transcapital Corporation (hereinafter FTC) brought this action to recover on a series of promissory notes executed by the corporate defendant King Umberto, Inc., and guaranteed by the individual defendants Salvatore and Filomena Fuschetto. The notes had been assigned to FTC by AA & R Construction Co. (hereinafter AA & R), the original holder of the notes. After a nonjury trial, the court dismissed FTC's first and second causes of action on the ground that FTC was not a holder in due course of the notes. We disagree.

UCC 3-302 (1) defines a holder in due course as one who takes a negotiable instrument (a) for value, (b) in good faith, and (c) without notice that it is overdue or of any defense against or claim to it on the part of any person. In this case, the trial court found that FTC was not a holder in due course because it took the subject notes with notice of the potential defenses the defendants could raise against AA & R. The court found that the closing of the loan between AA & R and the defendants on May 1, 1986, at which the defendants executed the subject notes in favor of AA & R, was a "sham" because, as events transpired, the defendants never obtained the proceeds of the loan. The court imputed to FTC the knowledge purportedly obtained of this "sham" by the attorney who represented AA & R at the closing because the attorney had represented FTC in other unrelated transactions.

However, the mere fact that an outside attorney may have

counted FTC as being among his many clients is insufficient to support the conclusion that he was acting as an agent for FTC at the closing between AA & R and the defendants. There is no evidence that such an agency relationship existed at the May 1, 1986, closing. Moreover, even if we were to assume that the attorney was also acting as an agent for FTC when he represented AA & R at the closing, there is no proof that he had the requisite notice of any defenses.

UCC 3-304 (7) provides that in order "to constitute notice of a claim or defense, the purchaser must have knowledge of the claim or defense or knowledge of such facts that his action in taking the instrument amounts to bad faith". It is well settled that: "UCC 3-304 (7) demands nothing less than actual knowledge of the claim against the instrument or of the facts indicating bad faith in taking the instrument * * * Holders in due course are to be determined by the simple test of what they actually knew, not by speculation as to what they had reason to know, or what would have aroused the suspicion of a reasonable person in their circumstances" *(Hartford Acc. & Indem. Co. v American Express Co.,* 74 NY2d 153, 162-163).

There is nothing in the present record to prove that the attorney had actual knowledge that the loan which was secured by the notes was illusory. Nor do the facts indicate bad faith on his part. At the closing, AA & R issued the defendants a check in the principal amount of the purported loan. Although the defendants immediately endorsed the check and handed it back to AA & R, it was with the understanding that it would be deposited into an escrow account from which King Umberto would pay AA & R pursuant to a construction contract. There is no evidence that the attorney knew before FTC purchased the subject notes that AA & R would redeposit the endorsed check into AA & R's own account rather than the escrow account and that the loan proceeds would not be used as the parties intended. Thus, no such knowledge can be imputed to FTC. Mangano, P. J., Bracken, Balletta and O'Brien, JJ., concur.