NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff/Counter Defendant,

v.

Edward D. ARIOLI, Individually and as Trustee for the Edward D. Arioli Revocable Living Trust, Defendant/Counter Plaintiff.

Civil Action No. 92–CV–40587.

United States District Court, E.D. Michigan, Southern Division.

Oct. 4, 1996.

---

Stephen M. Ryan, Raymond & Prokop, Southfield, MI, for Tench C. Coxe.

Amy L. Glenn, Hammond, Ziegelman, Roach & Sotiroff, Detroit, MI, for James M. Dangelo.

Michael J. Sullivan and Gerald A. Pawlak, Collins, Einhorn, Farrell & Ulanoff, PC., Southfield, MI, Peter B. Worden, Garan, Lucow, Miller, Seward & Becker, PC., Detroit, MI, for National Union Fire Ins. Co.

### *ORDER ADOPTING IN PART AND DENYING IN PART MAGISTRATE'S PEPE'S REPORT AND RECOMMENDATION*

GADOLA, District Judge.

This court, pursuant to 28 U.S.C. § 636(b)(1)(B), Fed.R.Civ.P. 72(b), and LR 72.1(d) (E.D.Mich. Dec. 6, 1993), has reviewed the January 19, 1996 report and recommendation of Magistrate Judge Steven D. Pepe, National Union's April 16, 1996 objections to the report and Edward D. Arioli's May 2, 1996 reply thereto, and the objections filed by Arioli on April 16, 1996 and National Union's May 6, 1996 reply thereto. In addition, the court has examined the voluminous record and relevant authorities in this matter. After conducting a *de novo* review, the court accepts the magistrate judge's report and recommendation in part and denies the magistrate's report and recommendation in part.

### *I. FACTUAL BACKGROUND*

Although an extensive discussion of the facts are set forth in the magistrate's report and recommendation, this court deems it necessary to recapitulate the facts in order to facilitate an understanding of this order.

This matter arises out of an alleged default on a 1984 investment of $300,000 by Arioli into a Georgia limited partnership, Bordeaux Partners, Ltd. (hereinafter "Bordeaux"). Bordeaux was formed for the purpose of acquiring, owning and operating two apartment complexes in Georgia. Prudential–Bache was designated as placement agent for Bordeaux and authorized to sell the Bordeaux limited partnership units to the public at the time of Arioli's investment.

Arioli's investment was secured by a $26,850 down payment and $273,150 promissory note notarized on October 1, 1984 (hereinafter the "October note"). The October note required Arioli to make nine semi-annual payments initiating on March 1, 1985 and terminating on March 1, 1989. The October note contained a discrepancy on its face between the interest rates and calculated interest payments.

A second note was allegedly signed by Arioli on October 15, 1984 and notarized on November 26, 1984 (hereinafter the "November note"). This November note corrected the discrepancy between the interest rates and the interest payments delineated in the October note. Arioli's purported signature on the November note was in fact a forgery.

Bordeaux financed the purchase of its two apartment complexes, costing approximately $10 million, through two loan closings. First, Paine Webber loaned $4,802,877 to Bordeaux. At the closing for this loan from Paine Webber on October 19, 1984, Bordeaux endorsed Arioli's October note, along with other limited partnership notes, to Paine Webber. National Union guaranteed the notes by issuing a financial guarantee bond to Paine Webber.

Banker's Life ultimately replaced Paine Webber as a lender and loaned Bordeaux $9,969,948, the entire amount needed to purchase the two apartment complexes. The closing for this loan was December 12, 1984 and again, the limited partners' promissory notes secured this loan. This time, Arioli's forged November note was endorsed by Bordeaux to Paine Webber, which in turn en-

dorsed the note to LaSalle National Bank (hereinafter "LaSalle") as trustee for Banker's Life Company (hereinafter "Banker's Life")[1]. National Union acted as a surety for the loan. This loan from Banker's Life had two unique features uncommon to ordinary real estate transactions: (1) Banker's Life did not receive a mortgage on the real estate, and (2) the general partners were exempt from personal liability on the loan. As a condition for acting as surety for these notes, National Union required each limited partner to sign an indemnification and pledge agreement (hereinafter "the agreement").[2] Arioli signed the agreement on October 1, 1996.

Arioli made six semi-annual payments to LaSalle from March 1985 through September 1987, but failed to make payments on March 1 and September 1, 1988 and March 1, 1989. National Union cured the default, at which time LaSalle endorsed Arioli's November note over to National Union, which now holds as subrogee.

## II. NATIONAL UNION'S AND ARIOLI'S MOTION FOR SUMMARY JUDGMENT ON NATIONAL UNION'S FOUR CAUSES OF ACTION

National Union asserts four causes of action in its original complaint filed on May 17, 1989.[3] First, National Union claims that it is subrogated to the rights of a holder in due course of the promissory note endorsed to National Union by LaSalle, as trustee for Banker's Life. Second, National Union contends that it is entitled to receive specific performance of its rights under the agreement. Third, National Union seeks to recover for Arioli's alleged breach of contract of the agreement. Lastly, National Union argues that it has a security interest in Arioli's limited partnership which has matured as a result of Arioli's alleged default on a promissory note and the October 1, 1984 agreement. In essence, National Union brings the first claim pursuant to the New York Commercial Code (hereinafter "holder in due course claim") and the remaining three claims based upon the agreement (hereinafter collectively "the agreement claims").[4]

On June 5, 1995, both National Union and Arioli filed motions for summary judgment on National Union's four claims. The magistrate found that National Union's claims all were based upon the forged November note, not the October note.[5] Proceeding upon this finding, the magistrate recommended that Arioli's motion for summary judgment be granted and National Union's motion be de-

---

1. Defendant argues in various briefs as to who committed the forgery of the November note. Defendant contends that after National Union sent a letter indicating that the October note showed a discrepancy between the interest rate and the interest payments, (Mariana Folescu letter, Def.Exh. O) the October note was sent back to Prudential–Bache, the placement agent, in order to secure a corrected note from limited investors. Arioli maintains that instead of securing a corrected note from the limited investors, Banker's Life, Paine Webber and National Union agreed instead to resolve the interest rate discrepancy by issuing a new forged note with the appropriate corrections made. Defendants argue that because this forged note was not notarized until November 26, 1984, it was not used in the first loan transaction between Paine Webber and Bordeaux which occurred on October 18, 1984. Rather, Defendants maintain that because the forged corrected note was not notarized until November, the forged note could only have been used in the second loan transaction between Banker's Life and Bordeaux on December 12, 1984. The Court expresses no opinion as to Arioli's theory about what parties initiated and what parties were involved in the forgery.

2. National Union also required Arioli to sign an Estoppel Letter, Investor Application for a Financial Guarantee Bond and a Subscription Agreement.

3. National Union originally filed its complaint naming 25 defendants, all limited partners in Bordeaux, in the Southern District of New York. This case was divested and the case against Arioli was transferred to the Eastern District of Michigan in 1992.

4. On April 15, 1994, National Union filed Motion for Leave to File a First Amended Complaint. National Union sought to add claims arising out of the issuance of a guarantee bond for another investment of Arioli's, the Polaris Aircraft Trust VII. The magistrate judge recommended that National Union's motion be denied and this court adopted the magistrate's recommendation.

5. The issue of whether National Union was bringing its claims pursuant to the November or October note was raised indirectly in the pleadings pertaining to National Union's Motion to File a First Amended Complaint. The magistrate judge did not rule on this issue at that time, nor did this court.

nied with respect to National Union's three agreement claims. The magistrate also recommended that both Arioli's and National Union's motions for summary judgment on National Union's holder in due course claim be denied.

### A. National Union's Agreement and Holder in Due Course Claims on the October Note

At this time, this court does not concur with the magistrate's conclusion that the complaint encompasses *only* the November note. Rather, this court finds that the language of the complaint does not foreclose the possibility that National Union intended the complaint to include the October note. Therefore, this court grants the parties thirty days leave to file a motion as to whether the scope of the complaint includes the October note.

### B. Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *60 Ivy Street Corporation v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to make credibility determinations or weigh the evidence. *Harris v. City of Akron*, 20 F.3d 1396, 1403 (6th Cir.1994), *cert. denied*, ——

U.S. ——, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). This burden "may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### C. National Union's Agreement Claims on the November Note

This Court adopts Magistrate Pepe's recommendation to grant summary judgment to Arioli on National Union's agreement claims, insofar as they relate only to the November note. This court finds, as did Magistrate Pepe, that the October 1, 1984 agreement is unambiguous and that the

agreement, by its plain terms, applies only to the October note.

■ This court's construction of the agreement is dictated by contract law. *State of N.Y. v. SCA Services, Inc., et al.,* 1994 WL 171165 (S.D.N.Y.1994). The first inquiry the court must make is whether language in the agreement unambiguously refers to the October or November note. *Sayers v. Rochester Tel. Corp.,* 7 F.3d 1091, 1094 (2d Cir.1993); *Chase Manhattan Bank N.A. v. Keystone Distrib., Inc.,* 873 F.Supp. 808 (S.D.N.Y. 1994). If the plain meaning of the agreement is clear, then the court need not resort to extrinsic evidence to assist in its interpretation. *Rothenberg v. Lincoln Farm Camp, Inc.,* 755 F.2d 1017, 1019 (2d Cir.1985). Indeed, if the agreement is unambiguous, its proper construction should be determined by the court as a matter of law. *Id.*

In this case, the court finds the agreement unambiguous and includes only the October note. The agreement reads in relevant part,

the Undersigned [Arioli] will protect, indemnify, and save harmless the Company [National Union] from and against any and all liability, loss, costs, damages, fees of attorneys, and other expenses which the Company may sustain or incur under or in connection with the policy or bond issued to the Partnership, or in connection with this Indemnification and Pledge Agreement, for: (a) sums paid to the Partnership or it assigns to cure the Undersigned's Default under ... the Undersigned's Note.

The agreement also provides "A copy of the Note to the Partnership is attached hereto." As the only note in existence on the date the agreement was signed (October 1, 1984) was the October note, and the parties do not deny that a note was attached, the agreement must apply *only* to the October note. Accordingly, the agreement cannot be extended to payments National Union made under the November note. Arioli's motion for partial summary judgment on the three

6. National Union argues that the November note and October note represent one obligation and therefore are "functional and legal equivalent[s]." This Court finds that the November and October notes are not the "same note" and there-

agreement claims, insofar as they relate to the November note, should be granted.

## D. National Union's Holder in Due Course Claim on the November Note

National Union argues that it is entitled to summary judgment in its favor on the holder in due course claim on the November note.[6] Likewise, Arioli contends that summary judgment should be granted in favor of Arioli on the holder in due course claim on the November note. This Court adopts the magistrate's finding denying summary judgment to both National Union and Arioli on National Union's holder in due course claim on the November note.

### 1. National Union As a Holder in Due Course

■ National Union seeks to recover as a holder in due course under the November note as subrogee of LaSalle (trustee for Banker's Life). A subrogee steps into the shoes of the subrogor and acquires his rights against the person whose debt was discharged. *Bruce v. Martin,* 845 F.Supp. 146, 148 (S.D.N.Y.1994) quoting *Nacional Financiera S.N.C. v. Americom Airlease, Inc.,* 803 F.Supp. 886 (S.D.N.Y.1992); *Salzman v. Holiday Inns, Inc.,* 48 A.D.2d 258, 369 N.Y.S.2d 238 (1975), *modified on other grounds,* 40 N.Y.2d 919, 389 N.Y.S.2d 576, 358 N.E.2d 268 (1976). New York law defines a holder in due course consistent with the Uniform Commercial Code § 3–302(1) as one who takes a negotiable instrument (a) for value; (b) in good faith; and (3) without notice that it is overdue or has been dishonored or of any defense or claim to it on the part of any person. McKinney's Uniform Commercial Code § 3–302(1); *First Transcapital Corp. v. King Umberto, Inc.,* 214 A.D.2d 699, 625 N.Y.S.2d 294, 295 (1995). National Union is not a direct holder in due course because National Union took the note

fore are not "functional and legal equivalents." Rather, the two notes are separate instruments and the merits of National Union's claims must be assessed on each note individually, not as a unit.

*with* notice that it was overdue in January 1990.

■ However, National Union may have holder in due course rights under the "shelter principle." The "shelter principle" operates to vest such rights in the transferee as the transferor had therein. U.C.C. § 3-201(1); *Manufacturers Hanover Trust Co. v. Robinson,* 157 Misc.2d 651, 597 N.Y.S.2d 986, 988 (Sup.Ct.1993); *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 202 (2d Cir. 1989). In this case, the transferee of the November note is National Union and the transferor is LaSalle as trustee for Bankers' Life.[7] Thus, the pivotal issue is whether Bankers Life was a holder in due course.

Arioli argues that Banker's Life is not a holder in due course because it did not take the note "in good faith" and "without knowledge" of fraud that Bordeaux was committing upon its investors, such as Arioli. Arioli argues that Bordeaux committed fraud on the Bordeaux investors by failing to disclose in the PPM or otherwise that the general partners assumed only limited liability. Arioli contends that Banker's Life was cognizant of and participated in this alleged fraud. Arioli depicts a close working relationship between Banker's Life and Bordeaux as early as October, 1984, maintaining that Banker's Life was already selected as a lender to Bordeaux and whereby Banker's Life gained knowledge of Bordeaux's alleged misrepresentations to its investors. Arioli points to various correspondence between Bordeaux, Paine Webber and Banker's Life in order to show that Banker's Life was involved in the review and revision of the documents for the first loan from Paine Webber to Bordeaux in October. Arioli also references the deposition testimony of David Schmidt, counsel for Paine Webber and Martin Kamarck, counsel for Banker's Life, to show that Banker's Life was on notice of the interest problem in the October note, had knowledge of the Bordeaux partners limited liability and had a copy of the PPM which contained the alleged misrepresentations. In any event, Arioli insists that Banker's Life cannot be a holder in

due course who takes free of the personal defense of fraud in the inducement because Banker's Life "dealt with" Arioli.

In support of its motion for summary judgment on this issue, National Union introduced an affidavit by Kenneth Chan, Claims Analyst for A.I. Management and Professional Liability Claim Adjusters Division of AIG Technical Services, Inc., which handles matters relating to National Union's financial guarantee bonds. The Chan affidavit was submitted to prove that Arioli defaulted on his obligation, National Union made payments on Arioli's behalf and that Banker's Life negotiated the November note to National Union.

In response to Arioli's averment that Banker's Life knew of alleged fraud committed by Bordeaux on its investors, National Union contends that Bordeaux made no material misstatements in the PPM and thus committed no fraud upon its investors. National Union also argues that Banker's Life was not selected in October, 1984 as lender to Bordeaux and it had no knowledge of any fraud. National Union introduced an affidavit of its attorney, Gerald A. Pawlak to show that Banker's Life was not selected as permanent lender in October, 1984. Pawlak states that Philadelphia Saving Fund Society was also being contemplated as a permanent lender to Bordeaux in October, 1984. Pawlak attached two exhibits to his affidavit: (1) Endorsement # 1, dated October 18, 1984, which allowed Paine Webber, Inc. to assign a bond to Philadelphia Saving Fund Society, in the event Philadelphia Saving Fund Society was chosen to be the permanent investor to Bordeaux, and (2) Endorsement # 2, dated October 18, 1984, which allowed Paine Webber, Inc. to assign a bond to Banker's Life, in the event Banker's Life was chosen to be the permanent investor to Bordeaux.

■ This court agrees with the magistrate there is a genuine issue of material fact as to whether National Union can claim protection of the rights of a holder in due course under the "shelter principle." As a preliminary matter, this court finds that there is suffi-

---

7. Henceforth, the transferor will be referred to as "Banker's Life" as opposed to "LaSalle, as trustee for Banker's Life."

cient evidence from which a reasonable juror could conclude that there was fraud in the investment transaction, that being Bordeaux's alleged non-disclosure of the partners limited liability. It is the general rule of partnership law that general partners are liable for the partnership debts. *See e.g. Life Care Ctrs. of America, Inc. v. Charles Town Assocs. Ltd. Partnership,* 79 F.3d 496, 503 (6th Cir.1996). In addition to the general rule, language in the PPM suggests that the general partners will be liable for the loan: "[t]he General Partner will, to the extent of its assets, be generally liable for all obligations of the Partnership to the extent such obligations are not paid by the Partnership or are not, by their terms, limited to recourse against specific property."

■ In addition to the genuine material dispute as to whether there exists fraud in the transaction, there is also conflicting evidence as to whether Banker's Life "dealt with"[8] Arioli and whether Banker's Life took the November note in good faith[9] and without *actual* notice[10] of the alleged fraud. In light of all the genuine issues of material fact with respect to these issues, summary judgment in favor of National Union or Arioli on the holder in due course claim is precluded at this time.

### 2. Arioli's Waiver of Defenses On or Ratification of the November Note

■ This Court also agrees with the magistrate's finding to deny summary judgment to Plaintiff and Defendant on the issue of whether Arioli ratified or waived any defenses on the November note. In so doing, this court accepts the magistrate's conclusion that there is a genuine issue of fact as to whether Arioli ratified the forgery on the November note by accepting tax benefits on the same after learning of the forgery. If Arioli accepted tax benefits in 1989 after learning of the forgery, then Arioli may have ratified the forged November note. *See* U.C.C. § 3–404(1); *Agristor–Leasing–II v. Pangburn,* 162 A.D.2d 960, 557 N.Y.S.2d 183, 185 (1990) (a party may not avoid an agreement after accepting a benefit under the same).

■ At the same time, this court disagrees with the magistrate's finding that there is genuine issue of material fact as to when Arioli learned of the forgery. This court finds that Arioli did not learn of the forgery until 1989.

The magistrate found conflicting evidence concerning the timing of Arioli's knowledge of the forgery because of conflicting statements in Arioli's response brief and Arioli's affidavit. Arioli's response brief reads in relevant part that National Union "was put on notice by [Arioli's] counsel of the fraud and forgery involved in this case in early 1987." Yet, in an affidavit, Arioli states that he did not learn of the forged November note's existence until after this lawsuit commenced in May, 1989.

8. The U.C.C. § 3–305(2) provides "to the extent that a holder is a holder in due course he takes the instrument free from ∴. all defenses of any party to the instrument with whom the holder has not dealt." As applied by New York courts, the "dealt with" provision "denies holder-in-due-course immunity to a person who had such intimate involvement in the underlying transaction as to warrant imputing to him knowledge of its irregularities—an application that essentially replicates two of the preconditions to achievement of holder-in-due-course status, *i.e.* that the holder must take the instrument in good faith and without notice of defenses." *A.I. Trade Fin., Inc. v. Laminaciones de Lesaca, S.A.,* 41 F.3d 830, 838 (2d Cir.1994).

9. "Good-faith" requires "honesty in fact in the conduct or transaction concerned." U.C.C. § 1–201(19); *Davis Auction House Inc. v. Ontario Nat'l Bank,* 201 A.D.2d 878, 609 N.Y.S.2d 707,

709 (1994). The standard is a subjective one. *Chemical Bank v. Haskell,* 51 N.Y.2d 85, 432 N.Y.S.2d 478, 480–81, 411 N.E.2d 1339, 1341 (1980).

10. The standard for "notice" is subjective, requiring actual knowledge. *Hartford Accident & Indemnity Co. v. American Express Co.,* 74 N.Y.2d 153, 544 N.Y.S.2d 573, 577–79, 542 N.E.2d 1090, 1094–95 (N.Y.1989) (citations omitted). Suspicious circumstances do not constitute "actual knowledge." *Fortunoff v. Triad Land Assocs.,* 906 F.Supp. 107, 113–14 (E.D.N.Y. 1995). The element of notice is consistent with the policy underlying the "holder in due course doctrine" which is to remove uncertainty and encourage negotiability of commercial paper. *Unico v. Owen,* 50 N.J. 101, 232 A.2d 405 (1967). The more knowledge the holder possesses of the underlying transaction, the less need to provide him protection under the law. *Id.*

In deciding motions for summary judgment, representations of counsel in a brief are generally treated as admissions. *American Title Insurance Co. v. Lacelaw Corporation,* 861 F.2d 224, 226 (9th Cir.1988) (citing *United States v. One Heckler–Koch Rifle,* 629 F.2d 1250, 1253 (7th Cir.1980) and 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 2723, pp. 64–66 (1983)). Notwithstanding the general rule, "inadvertent statements of fact made by counsel in briefs or memoranda should not be conclusively binding on the client in a summary judgment motion." *Id.* (citing *Hub Floral Corp. v. Royal Brass Corp.,* 454 F.2d 1226, 1228–29 (2d Cir.1972). Rather, when confronted with an unintentional declaration, the district court should have discretion to refuse the statement as a binding judicial admission.

This court, in exercising its discretion, finds that counsel did not make a binding admission meant to refute Arioli's assertion that he learned of the forgery in 1989. Rather, this court finds that counsel meant to state that National Union was put on notice by Arioli's counsel of the fraud, but not forgery in early 1987. This court's decision not to treat counsel's remark as an admission is further supported by the fact that National Union has not come forward with sufficient evidence to refute Arioli's claim that he was unaware of the forgery on the November note until after the lawsuit was commenced.

### III. ARIOLI'S COUNTER–CLAIMS

This Court accepts, *in toto,* the magistrate's recommendation to grant National Union's motion for summary judgment on Arioli's three counter-claims and dismiss the same. Arioli brings claims under: (1) Michigan's Uniform Trade Practices Act ("UTPA"); (2) the Michigan Consumer Protection Act ("MCPA") and (3) the common law of negligence.

### A. Arioli's UTPA Claim

First, Arioli seeks damages for alleged violations of the Michigan UTPA, §§ 2003(1)(2) and 2005(a)(g). Arioli claims that Terrence Sullivan, an employee of Prudential Bache, was an agent of National Union and engaged in actions in violation of the UTPA. Although the Michigan Supreme Court has not explicitly held that there is no private cause of action under the UTPA, the Michigan Court of Appeals has repetitively held that the UTPA does not grant a private cause of action. *See Isagholian v. Transamerica Ins. Corp.,* 208 Mich.App. 9, 527 N.W.2d 13, 17 (1994); *Bell v. League Life Ins. Co.,* 149 Mich.App. 481, 387 N.W.2d 154 (1986) lv. app. denied, 425 Mich. 870 (1986); *Safie Enterprises v. Nationwide Mutual Fire Ins. Co.,* 146 Mich.App. 483, 381 N.W.2d 747 (1985). Ergo, National Union's Motion for Summary Judgment on Arioli's UTPA claim must be granted and the claim dismissed.

### B. Arioli's MCPA Claim

Second, Arioli avers that National Union, through Terrence Sullivan's actions with respect to the sale of the Bordeaux limited partnership interests, violated the MCPA, MCL 445.901 et seq. Arioli's investment into the Bordeaux limited partnership is not a transaction for "personal, family or household purposes" so it is not covered by the MCPA. National Union argues that even if this investment is covered by the MCPA, Arioli has no claim under the MCPA because Sullivan is not an agent of National Union.

The MCPA prohibits unlawful acts in the conduct of "trade or commerce." Trade or commerce is defined as the "conduct of business providing goods, property, or service primarily for personal, family, or household purposes." MCLA § 445.902(d). In *Mercer v. Jaffe, Snider, Raitt, and Heuer,* 730 F.Supp. 74, 79 (W.D.Mich.1990), the court found that the MCPA "does not apply to the sale of securities." *Mercer* involved consumer protection claims brought by about 1,000 individual investors who had purchased mortgage-backed securities. Other courts have also found that similar consumer protection statutes do not apply to deals involving tax shelter promissory notes. *See, e.g., National Union Fire Ins. Co. v. Schulman,* No. 86–7914, slip op., 1990 WL 116735 (S.D.N.Y. August 8, 1990) (Fair Dept Collection Practices Act, covering personal, family, or household purposes, did not apply to promissory

**656**

note executed for tax shelter); *National Union v. Pidala,* No. 85–4487, slip op. (S.D.N.Y. May 28, 1986) (party was not consumer because he "was not buying a washing machine on credit; he was investing $55,000 in a tax shelter partnership").

■ The MCPA was intended to "protect consumers," it was not intended to cover commercial transactions. *National Utility Service, Inc. v. Hop–In Food Stores, Inc.,* No. 92–74460 at 13 (E.D.Mich. Nov. 10, 1993) (Gadola, J.). Similarly, in the context of this case, the MCPA was not intended to cover a guarantee of a promissory note used to purchase an interest in a limited partnership as a tax shelter. As a matter of law, judgment should be granted to National Union on Arioli's MCPA counter-claim.

Moreover, Arioli's MCPA's counter-claim fails for the reason provided in the magistrate's Report and Recommendation, that is, Sullivan was not an agent for National Union. As Sullivan was not an agent of National Union, summary judgment must be granted for National Union and Arioli's MCPA claim dismissed accordingly.

### C. Arioli's Negligence Claim

■ Lastly, Arioli's seeks to recover against National Union under a theory of negligence. A prima facie negligence case requires proof of four elements: (1) duty; (2) breach of duty; (3) proximate cause; and (4) damages. *See e.g. Schultz v. Consumers Power Co.,* 443 Mich. 445, 506 N.W.2d 175, 177 (1993). National Union owed no duty to Arioli, hence summary judgment should be granted in favor of National Union on Arioli's negligence counter-claim. *National Union v. Eaton,* 701 F.Supp. 1031, 1034 (S.D.N.Y. 1988) (National Union, as surety, did not owe a duty to limited partners and any research efforts conducted by National Union into the investment was solely for the benefit of National Union). *See also National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 207 (2d Cir.1989); *National Union Fire Ins. Co. v. Deloach,* 708 F.Supp. 1371, 1378–79 (S.D.N.Y.1989).